*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 3**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

OSMAN MOHAMMED NOOR,
*Appellant.*

No. 20160797
Filed January 18, 2019

On Direct Appeal

Third District, Salt Lake
The Honorable Vernice S. Trease
No. 09195211

Attorneys:

Sean D. Reyes, Att'y Gen., Daniel W. Boyer, Asst. Solic. Gen.,
Salt Lake City, for appellee

Samuel Alba, Robert T. Denny, Salt Lake City, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which JUSTICE HIMONAS and JUSTICE PEARCE joined.

ASSOCIATE CHIEF JUSTICE LEE and JUSTICE PETERSEN joined in the majority as to Section I.

ASSOCIATE CHIEF JUSTICE LEE filed a dissenting opinion in which JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1   Osman Mohammed Noor, a pro se petitioner and Somalian refugee, timely filed a petition under the Post-Conviction Remedies Act (PCRA) seeking relief from his convictions. In his original petition, he claimed that relief under the PCRA was warranted because, among other reasons, his trial counsel was ineffective in

failing to alert the district court to his lack of fluency with the English language and his cultural background. Before the district court determined the merits of his petition, the court appointed Mr. Noor pro bono counsel, but only after the one-year statute of limitations period on his PCRA petitions had expired. With permission from the court, pro bono counsel amended his petition by removing all previous claims from the original petition and replacing them with a claim that Mr. Noor's trial counsel was ineffective for (1) failing to secure competent interpreters for Mr. Noor at trial, (2) failing to allow him to participate in his own defense, and (3) failing to inform him that he would be deported if convicted.

¶2 The State moved to dismiss the allegations raised in the amended petition, arguing that they were time-barred under the PCRA's statute of limitations and that the amended claim in the amended petition did not arise out of the same conduct, transaction, or occurrence as the original claims, as required by rule 15(c) of the Utah Rules of Civil Procedure. The district court agreed with the State and held that the amended petition was time-barred under the PCRA.

¶3 On appeal, Mr. Noor argues that the district court erred in applying rule 15(c) to his amended petition because (1) the court had sufficient discretion to review his amended petition irrespective of whether the petition was filed after the one-year limitations period, and (2) rule 15(c) does not apply to amendments to PCRA petitions. Alternatively, he argues that if rule 15(c) does apply, his claim in the amended petition arises from the same conduct, transaction, or occurrence as the claim set forth in the original petition, and so his new claim is not time barred but instead relates back to the date of the original petition.

¶4 We hold that the district court did not err in concluding that rule 15(c) applies to proposed amendments made to PCRA petitions. Both the PCRA's language and Utah caselaw support applying rule 15(c)'s relation-back test to the PCRA and its procedural companion, rule 65C. This is consistent with recent amendments to the PCRA and rule 65C, which removed exceptions for time-barred petitions.

¶5 The district court did err, however, in concluding that the claim in Mr. Noor's amended petition did not satisfy rule 15(c) and so was time barred under the PCRA. Mr. Noor's amended petition did satisfy rule 15(c). He did not assert a new or different claim in his amended pleading and, under a liberal reading of the amendment, the State received notice of the factual grounds for his amended

claim. Accordingly, we reverse and remand for proceedings consistent with this opinion.

## Background[1]

¶6 Osman Mohammed Noor, a Somalian immigrant, entered his apartment manager's dwelling without her permission. He did so after an altercation with the manager. Once inside, Mr. Noor removed his clothing, pulled the manager on top of him, and attempted to kiss her repeatedly. He also simulated oral sex over her clothing and touched her genitals under her pants. He performed all of these acts against her will. During the incident, the manager repeatedly demanded that Mr. Noor stop his advances and leave her apartment. She also called the police, who arrived just as the manager broke free from Mr. Noor and ran from her apartment.

¶7 Mr. Noor was arrested and subsequently charged with one count each of burglary, forcible sexual abuse, and lewdness. Because he had difficulty understanding and communicating in English, he was provided with several interpreters to assist him throughout the course of his criminal proceedings. He was also appointed counsel from the legal defender's office, who communicated to Mr. Noor through the same interpreters.

¶8 In January 2011, Mr. Noor was tried by a jury on the three charges. He once again received assistance from two interpreters and representation by appointed counsel during the trial. At trial, the State put on two witnesses—the manager and the police officer who responded to her emergency call. After the State's case in chief, Mr. Noor's counsel moved for a directed verdict based on insufficient evidence, which motion the district court denied. The jury found Mr. Noor guilty on all three charges. The district court subsequently sentenced Mr. Noor to concurrent one- to fifteen-year prison terms for burglary and forcible sexual abuse, and the court ordered credit for time served on his lewdness conviction.

---

[1] "In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict." *State v. Honie*, 2002 UT 4, ¶ 2, 57 P.3d 977 (citation omitted). While here we are asked to review a district court's denial of post-conviction relief, and not a jury verdict, we view the facts through the same lens.

¶9 Following his conviction and sentence, Mr. Noor appealed the jury's determination to the Utah Court of Appeals, again through his appointed counsel.[2] On appeal, he argued that "the State failed to present sufficient evidence to prove that he had the requisite intent to commit lewdness or forcible sexual abuse."[3] Specifically, he argued that "subjugation and domination of women is acceptable and even encouraged in the highly patriarchal Somali culture" and that because of this "his actions should be viewed only as a misguided attempt to express love and affection and that he had no intent to commit forcible sexual abuse or lewdness."[4] He also claimed that his "lack of fluency in the English language and his intoxication impaired his ability to understand [the manager's] demands that he stop his advances and leave her apartment."[5]

¶10 The court of appeals held that Mr. Noor had failed to preserve these arguments for appeal. It noted that Mr. Noor's motion for directed verdict never mentioned the arguments he raised on appeal, and instead merely "move[d] for a directed verdict of acquittal based on insufficiency of evidence,"which the district court immediately denied.[6] "This exchange," the court reasoned, "did not apprise the district court that Noor was asserting that his cultural background, intoxication, and difficulties understanding English rendered him unable to form the requisite intent as to the crimes charged against him."[7] The court therefore declined to address the merits of these arguments and affirmed all three convictions on July 12, 2012.[8]

¶11 Mr. Noor thereafter petitioned this court for certiorari, which we denied on October 17, 2012.[9] He did not pursue an additional appeal to the United States Supreme Court. On

---

[2] *State v. Noor*, 2012 UT App 187, 283 P.3d 543.

[3] *Id.* ¶ 4.

[4] *Id.* ¶ 6.

[5] *Id.*

[6] *Id.* ¶ 7.

[7] *Id.*

[8] *Id.* ¶ 8.

[9] *State v. Noor*, 288 P.3d 1045 (Table) (Utah 2012), 2012 WL 5544861.

November 5, 2013, Mr. Noor—this time without the assistance of counsel—filed a petition (Original Petition) for relief under the PCRA. He also simultaneously filed a request for court-appointed counsel to help him in pursuing his PCRA claims, which the district court denied on December 30, 2013. In his Original Petition, he made three claims for post-conviction relief, one of which is relevant to this dispute: "[d]enial of effective assistance of trial counsel" for his appointed counsel's failure to "br[ing] to the trial court's attention that [Mr. Noor's] lack of fluency in English . . . impaired his ability to understand the victim's demands that he stop his advances" and for counsel's failure to "br[ing] to the trial court's attention the fact that [Mr. Noor's] cultural background prevented him from forming the requisite intent" in this case. It is undisputed that Mr. Noor's Original Petition was filed two months before the PCRA's statutory deadline of January 15, 2014.[10]

¶12 In response to the Original Petition, the State filed its initial motion for summary judgment. Before filing an opposition to the State's motion, Mr. Noor wrote the district court explaining his difficulty reading and writing in English and requested that the court appoint counsel to assist him with his PCRA claims. In response, on April 7, 2014, the court ordered that Mr. Noor be appointed pro bono counsel and requested the Utah State Bar's assistance in making that appointment. On October 7, 2014, the first pro bono counsel entered an appearance on Mr. Noor's behalf, but, due to a conflict, was allowed to withdraw as Mr. Noor's counsel by the district court on December 8, 2014. Mr. Noor was then appointed his current pro bono counsel, Sam Alba, on March 4, 2015. At a status conference on April 27, 2015, the district court asked Mr. Alba if he "wanted time to file a supplemental or amended petition as counsel for Mr. Noor." Mr. Alba responded that he believed the Original Petition was not "adequate" and that he "need[ed] an opportunity to try and put some substance to it." The State did not object and the district court granted leave to amend the Original Petition.

¶13 Mr. Noor filed his amended petition (Amended Petition) on August 28, 2015—more than a year and seven months after the PCRA's statute of limitations had run. The Amended Petition omitted all three claims for relief listed in the Original Petition. In their place, Mr. Noor asserted a per se ineffective assistance of

---

[10] *See* UTAH CODE § 78B-9-107(1).

counsel claim for his counsel's alleged failure to "seek a competent interpreter for Mr. Noor at trial." He also alleged three other grounds for ineffective assistance of counsel, asserting that his counsel was ineffective in (1) failing to carry out his "obligation to make sure that Mr. Noor understood what was happening at trial,"(2) "not let[ting] Mr. Noor aid in his own defense prior to trial"; and (3) "failing to advise Mr. Noor of the risk of deportation if a jury found him guilty."

¶14 The State filed a motion for summary judgment seeking to dismiss all of Mr. Noor's allegations in the Amended Petition on the basis that, in addition to other grounds, they were time-barred under the PCRA's one-year statute of limitations and did not relate back to the claims in the Original Petition. In response, Mr. Noor did not dispute that the Amended Petition was filed after the one-year deadline, but instead argued that the amendments should be deemed timely because the district court, pursuant to its authority, granted him leave to amend the Original Petition at the status conference. Alternatively, he argued that the claims in the Amended Petition related back to the claims in the Original Petition.

¶15 The district court disagreed with Mr. Noor on both arguments. The court first rejected his argument that the court's grant of leave to amend excused him from the PCRA's one-year time bar, noting that when it had granted leave to Mr. Noor's counsel at the status conference "the limitations period was not raised by the parties or addressed [by] the Court." The court further stated that "even if the statute of limitations issue would have been raised, it is doubtful that the Court had any authority to extend the limitations period at the time of the status conference" because "the legislature has sharply restricted a district court's ability to consider an untimely petition for postconviction relief."

¶16 The court also rejected Mr. Noor's alternative argument— that the claims raised in the Amended Petition related back to the Original Petition. The court determined that amendments to post-conviction petitions are governed by rule 15(c) of the Utah Rules of Civil Procedure—so that in order for a new claim filed after the one-year bar to be declared timely "the new claim must 'ar[i]se out of the conduct, transaction, or occurrence set forth . . . in the original pleading." The court then held that "even the most liberal reading of the allegations in the Original and Amended Petition cannot sustain a reasonable inference that the claims in the Amended Petitions arise from the same factual allegations as the claims in the Original Petition." The district court therefore granted summary

judgment in favor of the State and dismissed all of the claims raised by Mr. Noor in the Amended Petition.

¶17 Mr. Noor timely appealed the district court's decisions and the court of appeals certified this case to us. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

## Standard of Review

¶18 Mr. Noor effectively raises two issues on appeal: (1) whether the relation-back doctrine provided in rule 15(c) of the Utah Rules of Civil Procedure must be satisfied when a petitioner amends his or her PCRA petition after the expiration of the one-year statute of limitations set forth in Utah Code section 78B-9-107(1); and, (2) if so, whether the district court erred in dismissing the claims raised in Mr. Noor's Amended Petition on the ground that they did not relate back to the claims in his Original Petition. "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law."[11] Similarly, "[w]e review the district court's decision to grant summary judgment for correctness, granting no deference to the [district] court."[12] We likewise have held that "[a] district court's interpretation of a statute is a question of law, which we also review for correctness."[13]

## Analysis

¶19 On appeal, Mr. Noor first argues that the district court erred in holding that it lacked authority to allow him to add new claims to his Original Petition after the one-year statute of limitations had run. He argues that both the PCRA and Rule 65C of the Utah Rules of Civil Procedure[14] grant the court discretion to allow amended PCRA petitions even when they raise claims unrelated to claims filed in a petitioner's original petition, and even after the statute of limitations

---

[11] *Taylor v. State*, 2012 UT 5, ¶ 8, 270 P.3d 471 (citation omitted).

[12] *Alliant Techsystems, Inc. v. Salt Lake Cty. Bd. of Equalization*, 2012 UT 4, ¶ 17, 270 P.3d 441 (citation omitted) (second alteration in original).

[13] *Id.*

[14] Rule 65C sets forth the procedural rules that "govern[] proceedings in all petitions for post-conviction relief filed under the Post-Conviction Remedies Act." UTAH R. CIV. P. 65C(a).

in section 78B-9-107(1) has expired. He further argues that the district court has sufficient discretion to allow new claims in PCRA petitions, even when the new claims fail to satisfy rule 15(c)'s relation-back test.[15]

¶20  But Mr. Noor fails to account for language within the PCRA which explicitly states that the rules of civil procedure apply. He likewise ignores our recent case, *Gordon v. State,*[16] where we held that rule 7(e) is implicitly incorporated into rule 65C. Additionally, as noted by the district court, amendments made to both the PCRA and Rule 65C show that district courts' discretion to grant time-barred petitions has been restricted. Accordingly, we hold that the district court correctly concluded it lacked discretion to allow new claims that do not meet rule 15(c)'s relation-back test after the limitations period had run.

¶21  In the alternative, Mr. Noor argues that even if the district court lacked authority to allow the new claims raised in the Amended Petition, these new claims satisfy rule 15(c)'s relation-back test. He asserts that his Original Petition contained claims for ineffective assistance of counsel, mentioned the fact that he had trouble understanding English, and noted his cultural background. He argues that these arguments were "the core of [his] amended claims." He also contends that rule 15(c) should be liberally construed given rule 15(a)'s mandate and in light of the fact that he filed his Original Petition pro se. We agree.

¶22  The district court erred in holding that Mr. Noor's amended claims did not relate back to his Original Petition. The allegations raised in his Amended Petition did not involve "new and different cause[s] of action," which are prohibited under our relation-back jurisprudence.[17] Instead, the amendments merely expanded the

---

[15] Rule 15(c) of the Utah Rules of Civil Procedure provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading."

[16] 2016 UT 11, ¶ 39 n. 17, 369 P.3d 1255.

[17] *See Behrens v. Raleigh Hills Hosp., Inc.,* 675 P.2d 1179, 1182 (Utah 1983).

claims Mr. Noor pled in his Original Petition. We reverse on this ground.

## I. The District Court Correctly Held That It Did Not Have Discretion to Allow an Amendment to Mr. Noor's PCRA Petition Filed After the One-Year Statute of Limitations Unless the Amendment Met the Relation-Back Test of Rule 15(c)

¶23 Mr. Noor first argues that the district court had sufficient discretion to allow him to amend his PCRA petition after the statute of limitations had expired, regardless of whether his allegations in the Amended Petition related back to the Original Petition under rule 15(c). Specifically, he asserts that rule 65C exclusively governs PCRA petitions, and amendments to petitions, and that rule 15(c) does not apply to PCRA amendments filed after the one-year statute of limitations, because rule 65C makes no mention of rule 15(c). For support, he points to language within the PCRA, which states that "[p]rocedural provisions for filing and commencement of a petition are found in Rule 65C, Utah Rules of Civil Procedure."[18] According to Mr. Noor, this language indicates that the legislature intended rule 65C to exclusively govern PCRA claims.

¶24 He also points to two provisions within rule 65C that deal with amendments to PCRA petitions. First, he points to subsection (h)(3), which provides that when a claim is "deficient due to a pleading error or failure to comply with the requirements of [rule 65C], the court shall return a copy of the petition with leave to amend within 21 days," and that the "court may grant one additional 21-day period to amend for good cause shown."[19] Mr. Noor argues that "[t]his provision places no restriction on the claims that may be raised in the amended petition" and "does not suggest that such claims must be the same or relate back to the original petition." Second, he cites subsection (k), which sets out the requirements for answers and other responses and states that "[n]o further pleadings or amendments will be permitted unless ordered by the court."[20] He asserts that "[t]his provision leaves it within the trial court's discretion as to whether to allow amended PCRA petitions." Accordingly, Mr. Noor believes these two provisions

---

[18] UTAH CODE § 78B-9-102(1)(a).

[19] UTAH R. CIV. P. 65C(h)(3).

[20] *Id.* 65C(k).

show that the trial court has discretion when determining whether to allow a petitioner to file an amended petition, "even if it raises new claims and even after the statute of limitations has expired."

¶25 In response, the State argues the district court correctly concluded that amended petitions filed after the statute of limitations are subject to rule 15(c). It asserts that while rule 65C generally governs PCRA petitions, "when rule 65C does not specifically address a procedural issue, the remainder of the rules of civil procedure govern." In support, the State cites to language in section 78B-9-102(1)(a), which provides that "[p]roceedings under [the PCRA] are civil and are governed by the rules of civil procedure." The State also argues that while rule 65C does contain provisions governing amended petitions, these provisions are silent on whether claims are time barred when raised in an amended petition that falls outside of the PCRA's statute of limitations. We agree with the State on this point.

¶26 The district court correctly held that, for several reasons, PCRA petitions are governed by rule 15 of the Utah Rules of Civil Procedure. First, the language of the PCRA supports this conclusion. Section 78B-9-102 provides in relevant part:

> This chapter establishes the sole remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies, including a direct appeal except as provided in Subsection (2). This chapter replaces all prior remedies for review, including extraordinary or common law writs. *Proceedings under this chapter are civil and are governed by the rules of civil procedure. Procedural provisions for filing and commencement of a petition are found in Rule 65C, Utah Rules of Civil Procedure.*[21]

As shown above, the legislature expressly stated that the rules of civil procedure will govern "[p]roceedings" in PCRA claims. Although the statute provides that "[p]rocedural" requirements to PCRA petitions are "found in Rule 65C," this line cannot be read in isolation. When both provisions are read together, it appears the legislature intended PCRA claims to be governed by all of the rules of civil procedure and that a court should make "procedural"

---

[21] UTAH CODE § 78B-9-102(1)(a) (emphasis added).

departures from the rules only when expressly called for in rule 65C. Because rule 65C does not explicitly address new claims in amended petitions filed after the one-year statute of limitations, other rules of civil procedure, including rule 15(c), should be used to fill in the gaps.

¶27 Second, our caselaw supports an incorporation of rule 15(c) into rule 65C. Recently, in *Gordon v. State*, we reviewed a district court's failure to allow a PCRA petitioner an opportunity to reply to the State's response to his petition.[22] After reviewing the petitioner's motion for reconsideration on this matter, the district court denied the petitioner's motion on the ground that "the PCRA does not explicitly give a petitioner a right to reply to a response by the State."[23] On appeal, we held that, even absent such explicit language, the petitioner had a right to file a reply under the PCRA pursuant to the rules of civil procedure.[24] Specifically, we stated that "[c]ivil rule 65C(k) does not expressly call for a reply, but we find such a right incorporated in rule 7(e)" and that "rule 65C's reference to disposition by 'hearing or otherwise' [was] an incorporation of other rules of civil procedure."[25]

¶28 *Gordon* may very well signal an express adoption of "other rules of civil procedure" into the PCRA by this court. At a minimum, our holding in *Gordon* shows our willingness to use "other rules of civil procedure" to answer questions raised by the text of rule 65C. We expressed no reservation in incorporating rule 7(e) into rule 65C, despite the lack of any express language indicating that we should. Incorporating rule 15(c) into rule 65C for claims in amended petitions filed after the one-year deadline therefore is consistent with our jurisprudence.

¶29 Finally, amendments to the PCRA and rule 65C support the district court's reading of rule 65C to include rule 15(c)'s relation-back test. In 2008, the legislature substantially altered the language and structure of the PCRA. Prior to 2008, the PCRA was considered only "a substantive legal remedy" for a petitioner

---

[22] 2016 UT 11, 369 P.3d 1255.

[23] *Id.* ¶ 8.

[24] *Id.* ¶ 39.

[25] *Id.* ¶ 39 nn. 17–18.

challenging a conviction or sentence.[26] After 2008, the legislature reformed the PCRA to make it the "sole legal remedy" for such challenges.[27] We noted that these changes to the PCRA worked to limit our courts' ability to review the merits of statutorily-barred petitions.[28]

¶30 The most important of these amendments, for the purposes of this case, was the removal of an explicit exception to the one-year time bar under the PCRA. The pre-2008 PCRA expressly permitted a district court to excuse the one-year time bar if justice required: "If the court finds that the interests of justice require, a court may excuse a petitioner's failure to file within the time limitations."[29] The 2008 amendment to the PCRA removed this "interests of justice" exception entirely and instead replaced it with three limited circumstances where the limitations period would be tolled: when "the petitioner was prevented from filing a petition" (1) "due to state action in violation of the United States Constitution"; (2) "due to physical or mental incapacity"; or (3) "due to force, fraud, or coercion."[30]

¶31 The removal of the "interests of justice" exception in the 2008 PCRA amendments curtailed a district court's discretion to

---

[26] UTAH CODE § 78-35a-102 (1996).

[27] *Id.* § 78B-9-102(1) (2008).

[28] For example, we have acknowledged that the 2008 amendment "appears to have extinguished our common law writ authority" to review the merits of certain time-barred petitions. *Peterson v. Kennard*, 2008 UT 90, ¶ 16 n.8, 201 P.3d 956; *see also Gardner v. State*, 2010 UT 46, ¶ 91, 234 P.3d 1115. While our common law writ authority appears to have been eliminated, we have suggested, although we have not reached the question, that this court may have ongoing constitutional authority to review the merits of such petitions. *See Winward v. State*, 2012 UT 85, ¶ 28, 293 P.3d 259; *Gardner*, 2010 UT 46, ¶ 93. But because Mr. Noor has not argued that this court has constitutional authority to review the merits of a petition that is time-barred under the PCRA, we offer no opinion on whether such authority exists.

[29] UTAH CODE § 78-35a-107(3) (1996).

[30] *Id.* § 78B-9-107(3) (2016). The third circumstance listed above was not part of the original 2008 amendment but was added later.

review time-barred PCRA petitions. Instead of granting a district court discretion to allow a petitioner to file a late claim where the court believed that the interests of justice require, the legislature limited the court's ability to allow time-barred petitions to three specific circumstances. The legislature therefore effectively limited the district court's broad discretion in hearing time-barred petitions. And by removing the interests of justice exception, along with the common law writs for post-conviction relief, the legislature indicated its intent that the PCRA, and its limitations period, be strictly followed.

¶32 In light of these changes, it seems highly unlikely that the legislature intended to grant a district court complete discretion to hear what would otherwise be time-barred claims in amended petitions filed after the limitations period had expired. Such a reading would undermine these amendments to the PCRA—a petitioner could simply rely on the broad discretion of the district court by amending its original petition and asserting new claims instead of filing a new petition that would ultimately be barred. Accordingly, holding that district courts do not have discretion to review new claims in amended petitions, unless these claims relate back to a claim filed in a timely original petition, gives effect to these amendments.

¶33 Amendments to rule 65C further illustrate that a district court's discretion to review barred claims under the PCRA has been statutorily curtailed. In 2009, this court amended rule 65C of the Utah Rules of Civil Procedure.[31] Prior to these amendments, rule 65C permitted a petitioner to file, in addition to claims asserted in the original petition, "[a]dditional claims relating to the legality of the conviction or sentence" when "good cause [is] shown."[32] This exception was removed by the 2009 amendments. The advisory committee notes state that this was done to "embrace Utah's Post-Conviction Remedies Act as the law governing post-conviction

---

[31] The 2009 amendments did not actually take effect until January 2010. However, because the advisory committee notes to rule 65C refer to these amendments as the "2009 amendments," we refer to them in the same manner.

[32] UTAH R. CIV. P. 65C(c) (2009).

relief,"[33] or, in other words, to give effect to the PCRA's statement that it is the "sole legal remedy" for post-conviction relief. We therefore removed the good cause exception from rule 65C to embrace the changes made to the PCRA that limited a district court's discretion for review of time-barred petitions. Removing the "good cause" exception in rule 65C therefore illustrates our intention to align our rules with the amended PCRA and thus shows our intention to strictly enforce its one-year statute of limitations. Because district courts' discretion was also limited by rule 65C, it follows that the district court does not have broad discretion to review new claims in amended petitions after the limitations period has expired.

¶34 Here, Mr. Noor argued to the district court that it had authority to review the claims in the Amended Petition without engaging in a relation-back analysis and that it had granted Mr. Noor leave to amend pursuant to that authority at the status conference. The district court determined, however, that it could not review the merits of Mr. Noor's claims in the Amended Petition unless those claims satisfied the relation-back test set forth in rule 15(c). In its memorandum decision, the court stated that it was "doubtful that the Court had any authority to extend the limitations period at the time of the status conference," reasoning that, through the amendments to the PCRA, "the legislature has sharply restricted a district court's ability to consider an untimely petition for post-conviction relief." Because of this restriction, the court concluded that "it does not appear that the Court had authority to extend the limitations period when it granted Mr. Noor's leave to amend the Original Petition." This conclusion was correct.

¶35 As stated above, the amendments to the PCRA and rule 65C work to restrict a district court's discretion to hear time-barred petitions. Of course, this restriction would likewise extend to a court's ability to hear amended petitions after the limitations period has run. Otherwise, the amendments would be useless, as petitioners would merely amend their original petitions in order to bring new time-barred claims before the court. So the district court correctly held it was precluded from reviewing the merits of the Amended

---

[33] UTAH R. CIV. P. 65C (2010) (advisory committee notes to the 2009 amendments).

Petition unless the claims listed therein satisfied rule 15(c)'s relation-back test.[34]

¶36 Accordingly, because the language of the PCRA, our caselaw, and the amendments to the PCRA and rule 65C support the district court's application of rule 15(c) in this case, we hold that the district court correctly concluded that it did not have discretion to review Mr. Noor's claims in his Amended Petition unless the claims related back to the claims in the Original Petition under rule 15(c).

## II. The PCRA's Statute of Limitations Did Not Bar Mr. Noor's Claims in His Amended Petition Because These Claims Relate Back To His Original Petition

¶37 Having established that rule 15(c) applies to PCRA petitions, we now turn to whether the district court erred in determining that Mr. Noor's claims in his Amended Petition did not relate back to his Original Petition. We hold that the court erred by applying an overly-narrow interpretation of rule 15(c)'s relation-back test. The proper test under Utah law is whether, under a liberal reading, the amended pleading imports "a new and different cause of action" or whether the amended pleading merely "expands or modifies" the same causes of action originally pled. Because Mr. Noor's Amended Petition permissibly expands upon the cause of action (ineffective assistance of counsel) he pled in the Original Petition, we hold that his claims in the Amended Petition relate back to the date his Original Petition was filed and therefore are not barred by the PCRA's statute of limitations.

¶38 Under Utah law, when "a new claim relates back to the date of the original pleading, a party may include it even when the statute

---

[34] Mr. Noor's other arguments in regard to the district court's authority are also unpersuasive. Mr. Noor cites *Gregg v. State*, 2012 UT 32, 279 P.3d 396, for the notion that our caselaw implies that a district court's authority to allow an amendment under rule 65C also includes the power to allow an untimely filing of a new claim. But no one raised the time-bar argument in *Gregg* and therefore his reliance is misplaced. Likewise, Mr. Noor cites *Benvenuto v. State*, 2007 UT 53, 165 P.3d 1195, for the same proposition. But *Benvenuto* dealt with a PCRA petition under the pre-2008 PCRA, and we explicitly dismissed the petitioner's claim there because he failed to meet the "'interests of justice' exception to the PCRA time bar." *Id.* ¶ 27. So *Benvenuto* also does not support Mr. Noor's argument.

of limitations has otherwise run on that claim."[35] Rule 15(c) of the Utah Rules of Civil Procedure governs when a claim "relates back."[36] It provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[37] Thus, in order for his claims in the Amended Petition to survive, Mr. Noor must show that they originated out of the same "conduct, transaction, or occurrence" set out (or attempted to be set out) in the Original Petition.

¶39 While this court has never explicitly defined the meaning of the terms "conduct, transaction, or occurrence," we have consistently held that, for purposes of rule 15(c), claims in an amended pleading relate back to the date of the original pleading when the "amendment . . . does not import into a case a new and different cause of action"[38] and "does not introduce a substantially new issue."[39]

---

[35] *James v. Galetka*, 965 P.2d 567, 575 (Utah Ct. App. 1998) (Bench, J., concurring); *see also Wilcox v. Geneva Rock Corp.*, 911 P.2d 367, 369 (Utah 1996) ("When the statute of limitations has expired before an amendment to a pleading is made, the amendment must relate back to the date of the original complaint if the amendment is to be effective.").

[36] UTAH R. CIV. P. 15(c).

[37] *Id.*

[38] *Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1182 (Utah 1983).

[39] *Meyers v. Interwest Corp.*, 632 P.2d 879, 881 & n.2 (Utah 1981). The dissent takes issue with the cases we have relied upon, arguing that this court has never made a ruling on rule 15(c), and so, in its view, the case before us presents a matter of first impression. While we acknowledge that this court has never expressly defined the meaning of the words "conduct, transaction, or occurrence," we certainly have established a standard as it relates to rule 15(c). As Justice Lee notes, in *Behrens*, we explicitly cited to rule 15(c) in holding that an amendment relates back when it "does not import into a case a new and different cause of action." 675 P.2d at 1182. Similarly, in *Hjorth v. Whittenberg*, we cited to the Utah Rules of Civil

(Continued)

¶40 But this does not mean that an amended pleading cannot relate back when the amendment differs from the original pleading. Relation back is proper under rule 15(c) "[w]here the amendment . . . expands or amplifies what is alleged in the original [pleading], even though imperfectly, in support of the cause of action."[40] In fact, we

---

Procedure, which had been in existence for two years at that time, for the exact same proposition—that an amendment to a complaint relates back when it "d[oes] not import into the case a new and different cause of action." 241 P.2d 907, 908 (Utah 1952). And in *Meyers*, we again spoke of rule 15(c) (although we mistakenly called it rule 15(e), which has never existed) in describing the relation back doctrine. There, we stated that an "amendment is allowed if it does not introduce a substantially new issue" because "[i]f no new issue is involved[,] the notice received . . . in the original complaint is deemed sufficient to alert [the defendant] to the need for gathering his evidence and preparing his case." *Meyers* at 881 & n.2. And *Meyers* is a case we have subsequently relied upon in our discussion of rule 15(c). *See Russell v. Standard Corp*, 898 P.2d 263, 265 (Utah 1995) (citing *Meyers*, after quoting the language of rule 15(c), for the proposition that rule 15(c) "allows a plaintiff to cure defects in his or her original complaint despite the intervening running of a statute of limitations"). These cases show that rule 15(c) has been interpreted by this court for many years, so we are not interpreting it here as a matter of first impression.

[40] *Peterson v. Union Pac. R.R. Co.*, 8 P.2d 627, 630 (Utah 1932). The dissent argues that our reliance on *Peterson* is misplaced. It first contends that the language in *Peterson* we cite today has no application to the question before us, because *Peterson* was decided before Utah adopted its rules of civil procedure. *See infra* ¶ 76 (Lee, A.C.J., dissenting). But the dissent misinterprets our caselaw. While it is true *Peterson* was decided before rule 15(c) was formally adopted in Utah, this court has relied upon *Peterson* for our interpretation of the relation back doctrine under rule 15(c) after its adoption. *See Behrens*, 675 P.2d at 1182–83 (citing both rule 15(c) and *Peterson* for the assertion that an amended pleading survives a statute of limitations bar if it does not import into the case "a new or different cause of action" than the original pleading); *Hjorth*, 241 P.2d at 908 (citing *Hartford Accident & Indemnity Co. v. Clegg*, 135 P.2d 919, 922 (Utah 1943), which in turn cites *Peterson*, in addressing the relation back doctrine under our rules of civil procedure). So we have

(Continued)

have stated that a pleading may relate back even when the amendment provides an additional ground for the same claim

---

consistently held that *Peterson* correctly reflects our relation back standard under rule 15(c).

The dissent also contends that we incorrectly state the "operative legal test" in *Peterson*, and so our opinion, in its view, "finds no footing in the *Peterson* opinion." *See infra* ¶ 74 (Lee, A.C.J., dissenting). Specifically, it states that the legal test set forth by the *Peterson* court did not focus on whether the amended pleading invoked a new or different cause of action or whether the amendment merely expanded or amplified what was alleged in the original complaint. We are perplexed by this assertion. In determining whether Mr. Peterson's amended complaint related back to the date of the original complaint, we expressly defined the legal question in the case: "[t]he question . . . is whether or not the amended complaint states a new or different cause of action so that the limitation intervenes and cuts off the right." *Peterson*, 8 P.2d at 630. We provided that "[i]t is well established that a new or different cause of action may not be alleged under the guise of an amendment, . . . and also that an amendment which does not set up a new cause of action relates back to the commencement of the action." *Id.* (citation omitted). We continued by stating that "[w]hen a cause of action set forth in an amended pleading is new, different, and distinct from that originally set up, there is not relation back, and the amendment is the equivalent to the filing of a new action," but "[w]here the amendment merely expands or amplifies what is alleged in the original complaint, even though imperfectly, in support of the cause of action, it is properly allowed." *Id.* And in our conclusion, we stated that "[w]hen we compare the amendment with the original complaint in the light of the foregoing rules, we think there is such an identity of the cause of action as justifies us in holding that the amendment does not state a *new or different cause of action*, and therefore the limitation of time has not run against the cause of action stated therein." *Id.* (emphasis added). Clearly the operative test in *Peterson* was whether an amended pleading set forth a new cause of action or whether it was merely an expansion of the original claim. And the fact that the *Peterson* court admitted that this test is sometimes difficult to apply does not, as the dissent suggests, mean that the court invoked a different test. So *Peterson* does support our holding today.

resulting from the same injury.[41] Thus, when the issue presented in the amendment is sufficiently related to the issue presented in the first claim so as to be reasonably construed as an expansion or modification of the first claim, rule 15(c) is satisfied.

¶41 Prohibiting new causes of action, while at the same time permitting expansions and modifications in amendments, gives effect to rule 15(c)'s general purpose. Rule 15 "provides liberally for [the] amendment of pleadings and supplemental pleadings to the end that litigation may be disposed of on the merits."[42] In this vein, rule 15(c) "allows a plaintiff to cure defects in his or her original complaint despite the intervening running of a statute of limitations."[43] This means that we will liberally construe amendments to pleadings when conducting our relation-back analysis in order to "permit[] a complete adjudication of the matters in controversy."[44] This is especially true "where there is reasonable ground for holding that the amendment is an amplification of allegations already stated."[45]

¶42 Additionally, "[t]he rationale of . . . Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations

---

[41] *See Behrens*, 675 P.2d at 1182 ("Even the setting forth of 'an additional ground of negligence as the cause of the same injury' is not a new cause of action." (citation omitted)).

[42] *Behrens*, 675 P.2d at 1182 (citation omitted); *see also Peterson*, 8 P.2d at 630 ("[A] pleading should be liberally construed with a view to substantial justice between the parties."); *Johnson v. Brinkerhoff*, 57 P.2d 1132, 1136 (Utah 1936) (holding that the relation back doctrine works "toward liberality in allowance of amendments to pleadings for the purpose of permitting a complete adjudication of the matters in controversy and in furtherance of justice") (*overruled on other grounds by statue as stated in Allred v. Educators Mut. Ins. Ass'n of Utah*, 909 P.2d 1263 (Utah 1996)).

[43] *Donjuan v. McDermott*, 2011 UT 72, ¶ 14, 266 P.3d 839 (quoting *Russell v. Standard Corp.*, 898 P.2d 263, 265 (Utah 1995)).

[44] *Johnson*, 57 P.2d at 1136.

[45] *Peterson*, 8 P.2d at 630.

were intended to provide."[46] So analysis under rule 15 also typically involves an "inquir[y] into whether the opposing party has been put on notice regarding the [amended] claim."[47] This means that an amended pleading may relate back as long as the parties in an action have been reasonably put on notice of the new claims before the statute of limitations has expired.[48] This is done to "safeguard the rights of the other party to have a reasonable time to meet a new issue if he so requests."[49] Accordingly, rule 15(c) works to "strike a balance between the policy of deciding a case on its merits and allowing a party to enjoy the benefits [(notice)] of the statute of limitations."[50]

¶43 Below, the district court did not rely on our caselaw in its rule 15(c) determination. Instead, it relied on federal law interpreting rule 15(c)'s relation-back test.[51] Citing *Mayle v. Felix*,[52] the court held that a new pleading relates back under rule 15(c) only when both "the original and [new claims] are tied to a common core of operative facts."[53] The court reasoned that the new claims in the

---

[46] *2010-1 RADC/CADC Venture, LLC v. Dos Lagos, LLC*, 2017 UT 29, ¶ 18, 408 P.3d 313 (citation omitted).

[47] 6A Charles Alan Wright et al., *Federal Practice & Procedure* § 1497 (3d ed. 2010).

[48] *Cheney v. Rucker*, 381 P.2d 86, 91 (1963) ("What [parties] are entitled to [under our rules] is notice of the issues raised and an opportunity to meet them. When this is accomplished, that is all that is required.").

[49] *Id.*

[50] *Dos Lagos*, 2017 UT 29, ¶ 18.

[51] The dissent's opinion likewise suffers from this same shortcoming. Although the dissent argues extensively that our caselaw does not support the legal standard we articulate today, it does not make any attempt to square its own proposed standard with that caselaw. Instead, the dissent eschews the standard we have employed for nearly seventy years—since the codification of rule 15(c) in 1950—in favor of a federal standard that did not exist, even in federal courts, at the time of the rule's adoption.

[52] 545 U.S. 644 (2005).

[53] *Id.* at 664.

Amended Petition did not arise from the same factual allegations as the Original Petition, noting that "[w]hile the Original Petition does mention Mr. Noor's difficulty speaking and understanding English, the Original Petition does not discuss any problems with the interpreters at trial or in Mr. Noor's communication with counsel." And it explained that "the Original Petition only alludes to Mr. Noor's difficulty with the English language in connection with the claim that Mr. Noor could not have formed the intent necessary to have committed the underlying crimes." Operating under this standard, the court concluded that "it cannot reasonably be inferred that the allegations and claims in the Amended Petition are based on the same operative facts and claims as the Original Petition."

¶44 Mr. Noor claims this was error. He asserts that the district court should have interpreted rule 15(c) more liberally because he filed his petition pro se and rule 15(a) provides that courts "should freely give permission" to parties to amend their pleadings "when justice requires."[54] He additionally argues that the district court's narrow interpretation of a "transaction" or "occurrence" under rule 15(c) in this circumstance would "hobbl[e] counsel" and would unfairly harm "poor prisoners who need appointed counsel," but do not receive counsel until after the limitations period has run.[55]

¶45 Alternatively, he argues that his claims in the Amended Petition relate back even if *Mayle* does reflect the relation-back test under Utah law. Specifically, he contends that his claims in both the Original and Amended Petitions arise from a common core of operative facts because the "lack of English Fluency and his counsel's failure to adequately address this language barrier is the *core* of the ineffective assistance of counsel claims in his original and amended petition." He therefore claims that had the district court construed the factual allegations in his Original Complaint liberally, as required under rule 15, it would have allowed the amended claims to be heard.

¶46 Conversely, the State argues that rule 15(c) should be interpreted narrowly. Like the district court, it relies on the majority opinion in *Mayle v. Felix*, which interpreted the federal analog to rule 15(c) to allow relation back only when the claims added by amendment "arise from the same core facts as the timely filed

---

[54] *See* UTAH R. CIV. P. 15(a).

[55] *See Mayle*, 545 U.S. at 675–76 (Souter, J., dissenting).

claims," and not when "the new claims depend upon events separate in 'both time and type'" from the original episode.[56] The State argues that Mr. Noor's amended claims "shared no common core of operative facts with the claims raised in his original petition." We disagree.

¶47 While the standard articulated in *Mayle* may be informative,[57] as discussed above, we have consistently held that for purposes of rule 15(c) new claims in an amended pleading relate back to the date of the original pleading when the "amendment . . . does not import into a case a new and different cause of action,"[58]

---

[56] *Id.* at 656–57 (citation omitted).

[57] In *Mayle*, a majority of the United States Supreme Court rejected the Seventh and Ninth Circuits' interpretation of "conduct, transaction, or occurrence" as meaning the new claim must stem from the same "trial, conviction, or sentence," and adopted the rule in the majority of jurisdictions that interpret the language of rule 15(c) of the Federal Rules of Civil Procedure as allowing relation back "only when the claims added by the amendment arise from the same core facts as the timely filed claims." 545 U.S. at 657. We have not expressly adopted the "common core of operative facts" provision from *Mayle* and we do not do so here. While we have stated that "[i]nterpretations of the Federal Rules of Civil Procedure are persuasive where the Utah Rules of Civil Procedure are 'substantially similar,'" *Tucker v. State Farm Mut. Auto. Ins. Co.*, 2002 UT 54, ¶ 7 n.2, 53 P.3d 947, we have not stated that such interpretations are dispositive. Because it is well established in our caselaw that we look to the cause of action, and whether, under a liberal reading, the amendment can be said to expand or modify the original cause of action stated, there is no need to import this interpretation into our caselaw.

[58] *Behrens*, 675 P.2d at 1182. The dissent asserts that *Behrens* does not support the standard we articulate today. Specifically, it argues the *Behrens* court did not endorse a standard that focuses on whether the cause of action in the amended pleading is generally the same as in the original pleading in order for an amendment to relate back. *See infra* ¶ 79 (Lee, A.C.J., dissenting). But that is exactly what *Behrens* said. There, the defendant argued that "the claim for punitive damages is a *new claim* for relief that is barred by the statute of limitations." 675 P.2d at 1182 (emphasis added). Rather than dismiss

(Continued)

but instead "merely expands or amplifies what is alleged in the original [pleading]."[59] This means that the cause of action or claim

---

the defendant's argument for failing to focus on the "correct" legal standard, as the dissent suggests it did, the court clearly accepted this test as the operative legal test for relation back under rule 15(c), holding that "an amendment to include damages does not *import into a case a new and different cause of action*." *Id.* (emphasis added). It then went on to note that even the setting forth of "an additional ground of negligence as the cause of the same injury is not a *new cause of action*." *Id.* (emphasis added) (internal quotation marks omitted). And because it concluded that the punitive damages claim was not a new or different cause of action than the one asserted in the original pleading, it held that the statute of limitations did not apply. *Id.* So contrary to what the dissent argues, the *Behrens* court did focus on whether the amended complaint asserted a new or different cause of action, or whether it instead merely asserted the same cause of action.

The dissent also asserts that the operative test provided by the *Behrens* court was whether the proposed amendment to the complaint "raise[s] no new legal issues" and "does not refer to new or different acts of misconduct." *Infra* ¶ 78 (Lee, A.C.J., dissenting) (quoting *id.*). But the *Behrens* court looked only at whether there were different acts of misconduct for purposes of the notice of intent to sue, a prerequisite to sue a healthcare provider under the predecessor to Utah Code section 78B-3-412. That statute states that a plaintiff must provide a healthcare provider with notice that he or she intends to sue 90 days before commencing a formal action. As part of this requirement, a plaintiff must include within the notice "specific allegations of misconduct on the part of the prospective defendant." UTAH CODE § 78B-3-412(2)(e). In *Behrens*, the defendant argued, in addition to his rule 15(c) argument, that the plaintiff had failed to satisfy the statutory notice of intent to sue requirement. It was only in reviewing this second argument that the court stated that "[t]he proposed amendment to the complaint does not refer to new or different acts of misconduct." *Behrens*, 675 P.2d at 1183. So the court's focus on the "misconduct" asserted in the original complaint pertained only to the notice requirement under the Utah Code, not rule 15(c). The "misconduct" standard the dissent relies upon from *Behrens* was not the operative legal standard for rule 15(c).

[59] *Peterson*, 8 P.2d at 630.

asserted must generally be the same in both pleadings, and the issue presented in the amendment must factually relate to the issue presented in the first pleading.[60] We reaffirm this standard as our relation-back test. Thus, an amendment arises out of the same "conduct, transaction, or occurrence" when it arises out of the same cause of action and alleges the same kind of factual basis as the original allegation.[61] Under a liberal reading of the Amended Petition, Mr. Noor meets this test.

---

[60] *See, e.g., Dos Lagos*, 2017 UT 29, ¶ 18 ("Rule 15(c) is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading." (citation omitted)); *Johnson*, 57 P.2d at 1137 (holding that relation back was proper when the plaintiffs changed the instrument it relied upon for its water right claim from a contract to a deed in the amended petition because "[b]oth pleadings relate to the same subject-matter [(water)], the same transaction, and damages for the same wrong.").

[61] The dissent takes issue at length with the language we invoke in our articulation of the relation back standard—particularly with our assertions that rule 15(c) requires the issue presented in the amendment to be "based on factual allegations that 'expanded upon the factual basis' of the original pleading." *See infra* ¶ 68 (Lee, A.C.J., dissenting). In the dissent's view, our standard is "incompatible" with the text of Rule 15(c). *Infra* ¶ 69 (Lee, A.C.J., dissenting). So, in order to avoid our "fuzzy standard," *Infra* ¶ 99 (Lee, A.C.J., dissenting), the dissent chooses to "focus on the factual circumstances giving rise to the claim," *infra* ¶ 105 (Lee, A.C.J., dissenting), and endorse a line of federal cases holding that "relation back is allowed 'only when the claims added by amendment arise from the same core of facts as the timely filed claims.'" *Infra* ¶¶ 94 (Lee, A.C.J., dissenting) (citation omitted). But the dissent has essentially endorsed the same standard we set forth today. There is little, if any, distinction between requiring an amendment to "allege[] the same kind of factual basis as the original petition" and requiring that the amendment "arise from the same core of facts." This is just a preference in word choice. Both standards contain the

(Continued)

¶48 Here, Mr. Noor did not assert a new or different cause of action in his Amended Petition. In his Original Petition, he listed "[d]enial of effective assistance of trial counsel" as the first of three claims for which he believes he was entitled to post-conviction relief. Then, in his Amended Petition, he alleged his trial counsel's ineffectiveness as his sole claim (although with different variations of grounds for that claim) for relief. But in changing the grounds, he did not change the legal theory asserted in his Original Petition, nor did he introduce a substantially different legal issue. He therefore has not asserted a new or different cause of action.[62]

¶49 But this is not enough to satisfy rule 15(c). Mr. Noor must also show that his amendment may be reasonably construed as an expansion or modification of the original claim brought. In other words, he must show that the factual basis of the amended claim is sufficiently similar to the factual basis of the claim brought in the first case. And he has.

---

same requirement that we focus on the factual circumstances giving rise to the claim.

Here, Mr. Noor has asserted the same core fact in both his Petitions—that his counsel failed to present argument based on his inability to understand English. The dissent parses this fact further, drawing a distinction between how counsel's failure to argue that Mr. Noor's inability to understand English affected his interactions with the victim, as opposed to his interactions with his counsel. *Infra* ¶¶ 64–65 (Lee, A.C.J., dissenting). This core fact could, no doubt, be parsed even further. But this is not what rule 15(c), nor our caselaw, demands. Rather, these authorities mandate that we read amendments liberally. *See supra* ¶¶ 41–45.

[62] The dissent also criticizes our focus on whether a "new and different cause of action" is asserted in the amended pleading. Specifically, it argues that we are incorrectly limiting amendments permissible under rule 15(c) to those that assert the same "legal theory" as the original pleading. *See infra* ¶¶ 68 n. 73, 101 (Lee, A.C.J., dissenting). But we have not suggested this. Rather, we view the demand that the cause of action be the same in both pleadings as a practical, rather than literal, requirement. This means an amended pleading need not contain the exact same legal theory to relate back to the date of the original pleading. But we note that when the amended pleading contains an identical legal theory as the original, this certainly weighs in favor of relation back.

¶50 Mr. Noor's amended claim, when construed liberally, expands and amplifies the claim brought in the Original Petition. In his Original Petition, he identified several grounds for his ineffective assistance of counsel claim. Specifically, he claimed that his trial counsel was ineffective because, among other reasons, counsel did not "br[ing] to the trial court's attention the fact that [Mr. Noor's] cultural background prevented him from forming the requisite intent," and counsel failed to "br[ing] to the court's attention that [Mr. Noor's] lack of fluency of English impaired his ability to understand the victim's demands that he stop his advances." In his Amended Petition he altered these grounds, alleging that trial counsel was ineffective because counsel "fail[ed] to seek a competent interpreter for Mr. Noor at trial" and failed to "let Mr. Noor aid in his own defense."[63] In raising these new grounds, he argued that he "had a difficult time understanding the translation at trial," that he "did not even understand his accuser's testimony against him," and that his counsel "should have . . . ma[d]e sure that Mr. Noor understood" both "the police report" and "what was happening at trial . . . so that Mr. Noor could aid in his own defense."

¶51 While the new grounds listed in the Amended Petition are not identical to those in the Original, when read liberally,[64] they are sufficiently related to the grounds set forth in the Original. Mr. Noor's focus in his Amended Petition on counsel's failure to obtain a competent translator and failure to ensure Mr. Noor understood those speaking at trial can be reasonably construed as an expansion of his allegation in the Original Petition that his counsel

---

[63] Mr. Noor also claimed in his Amended Petition that trial counsel was ineffective because he "fail[ed] to advise Mr. Noor of the risk of deportation if a jury found him guilty." But he conceded at oral argument that this ground does not relate back under rule 15(c). We therefore do not address it here.

[64] A liberal reading of Mr. Noor's claims is not only supported by rule 15, but is also supported by the fact that he is pro se. We have stated that a party acting pro se "should be accorded every consideration that may be reasonably indulged" because "of his lack of technical knowledge of law and procedure." *State v. Winfield*, 2006 UT 4, ¶ 19, 128 P.3d 1171 (citation omitted). "Accordingly, this court generally is lenient with pro se litigants." *Lundahl v. Quinn*, 2003 UT 11, ¶ 4, 67 P.3d 1000.

was ineffective in failing to alert the court to his lack of fluency of English. Mr. Noor's claim in the Original Petition focused on trial counsel's failure to present an adequate defense on his behalf, a defense that hinged in large part on his inability to understand English and upon his cultural differences. In his Amended Petition, he expanded upon this factual basis, arguing that his counsel should have secured competent interpreters so that he could effectively defend against the allegations he faced. The State was therefore placed on notice that Mr. Noor was alleging ineffective assistance of counsel based upon counsel's failure to appreciate and highlight Mr. Noor's inability to understand English. Because Mr. Noor's amended claim, when construed liberally, is reasonably related to the claim he asserted in the Original Petition, it relates back for purposes of rule 15(c).

¶52 The dissent believes that the claim Mr. Noor raised in his Amended Petition did not arise out of the conduct, transaction, or occurrence alleged in the Original Petition. Instead, it contends that Mr. Noor's new claims "arose from an occurrence that was 'distinct in time and place' from that alleged in the [original] petition" and dealt with a different "actor."[65] We disagree. In both petitions, Mr. Noor alleged that his trial counsel was ineffective *at trial* for failing to argue the significance of his inability to understand English. In other words, Mr. Noor alleged in both petitions the same actor (his trial counsel), the same cause of action (ineffective assistance of counsel), the same time and place (his trial), and the same grounds for his cause of action (his inability to understand English). His amended claim was not distinct in time, place, or actor. So even under the dissent's proposed standard Mr. Noor's claims survive.

¶53 Further, the dissent completely fails to take into account the full language of rule 15(c). Rule 15(c) states that not only will an amendment relate back to the date of the original pleading when the amendment asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading, but that an amendment will also relate back when the claim asserted "arose out of the conduct, transaction, or occurrence . . . *attempted to be set out* . . . in the original pleading."[66] The dissent does not adequately account

---

[65] *Infra* ¶¶ 67–68 (Lee, A.C.J., dissenting).

[66] Utah R. Civ. P. 15(c)(2) (emphasis added).

for this language in its opinion.[67] But this language is as much a part of the rule as the "set out" language the dissent relies upon for its argument. The inclusion of the words "attempted to be set out" suggests that a party need not perfectly set out the conduct, transaction, or occurrence at issue in the original complaint, but must show only that the conduct, transaction, or occurrence referenced in the original petition was an attempt to set out the occurrence pled in the amended petition. In other words, the language of rule 15(c) itself requires a liberal reading of an amendment.

¶54 Here, Mr. Noor clearly "attempted to . . . set out" that his counsel was deficient at trial for failing to present argument based upon his inability to understand English. While the Original Petition may not have perfectly "set out" the conduct, transaction, or occurrence he would later set out in his Amended Petition, it seems a stretch to argue that he (as a pro se litigant who does not understand English) failed to even "attempt to . . . set out" the conduct, transaction, or occurrence set forth in his Amended Petition. His Original Petition contained the same actor, the same legal theory, the same time and place, and the same underlying basis for that theory. So when the rule is read in its entirety, Mr. Noor's claim in his Amended Petition relates back.

¶55 We have repeatedly reinforced this liberal reading requirement. We have stated that "Rule 15 provides liberally for amendment of pleadings and supplemental pleadings to the end that litigation may be disposed of on the merits."[68] We have also held that "rule 15 should be interpreted liberally so as to allow parties to have their claims fully adjudicated."[69] We have therefore made it clear that we should read both rule 15 and the amendments made thereunder liberally.

¶56 But the dissent fails to do so. Instead, it reads rule 15(c) strictly, arguing that because Mr. Noor did not specifically affix the fact that he did not understand English to his trial counsel's

---

[67] *See infra* ¶¶ 61, 76, 99 (Lee, A.C.J., dissenting).

[68] *Behrens*, 675 P.2d at 1182 (citation omitted); *see also Peterson*, 8 P.2d at 630 ("[A] pleading should be liberally construed with a view to substantial justice between the parties.").

[69] *Timm v. Dewsnup*, 851 P.2d 1178, 1183 (Utah 1993).

interaction with himself, but instead affixed it to his interaction with the victim of his crime, he cannot meet rule 15(c)'s standard. In so doing, the dissent contradicts our caselaw and the liberal reading requirement mandated by rule 15 itself.[70]

¶57 The dissent also fails to assign any weight to the fact that Mr. Noor is a Somalian immigrant who has difficulty understanding English, that he filed his Original Petition pro se, and that, despite his best efforts to alert the court to his inability to read and write in English, he was unable to secure counsel until well after the limitation period had run on his PCRA claim. As mentioned above, we have always been lenient to pro se litigants because of their lack of knowledge of law and procedure.[71] We accordingly grant pro se litigants "every consideration that may reasonably be indulged."[72] This is particularly true where the party amending the original pleading cannot even understand the language needed to effectively represent him or herself. So under our lenient pro se standard Mr. Noor's new claims should likewise survive.

¶58 Because a liberal reading of his Amended Petition is mandated by rule 15(c), our caselaw, and Mr. Noor's pro se status, we should not read rule 15(c) in the overly-narrow fashion suggested by the dissent. Instead, we should read it liberally. And under such a reading, his new claims arise out of the conduct, transaction, or occurrence he attempted to set forth in his Original Pleading. His claim therefore relates back to the date of his Original Pleading under rule 15(c).[73]

¶59 Accordingly, we remand this case to the district court for further proceedings consistent with our ruling.

---

[70] *See* UTAH R. CIV. P. 15(a)(2) (stating that a "court should freely give permission [to a party to amend his or her petition] when justice requires").

[71] *See Lundahl*, 2003 UT 11, ¶¶ 3–4.

[72] *Winfield*, 2006 UT 4, ¶ 19 (citation omitted).

[73] In its final critique, the dissent argues that our holding today "sets a new course for our law under rule 15(c)" and is "sure to bring unrest and uncertainty to this important area of Utah procedure." *Infra* ¶ 104 (Lee, A.C.J., dissenting). But we have merely applied to the case at hand the standard our court has used for almost a century. *See Behrens*, 675 P.2d at 1182; *Peterson*, 8 P.2d at 630.

**Conclusion**

¶60 We hold that rule 15(c) of the Utah Rules of Civil Procedure applies to amended PCRA petitions filed after the one-year limitations period. Both the language of the PCRA and our caselaw support such a reading. Further, the amendments to the PCRA and rule 65C illustrate that a district court's broad discretion to grant amendments to PCRA petitions has been limited. Additionally, we hold that the district court erred in its rule 15(c) determination. Mr. Noor did not allege a different cause of action in his Amended Petition. Rather, when his Amended Petition is viewed liberally, it is clear that he merely expanded on his claim that counsel was ineffective for not presenting argument based on his inability to understand English. We therefore reverse the district court's relation-back determination and remand for proceedings consistent with this opinion.

_____

ASSOCIATE CHIEF JUSTICE LEE, dissenting:

¶61 Rule 15(c) states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." UTAH R. CIV. P. 15(c)(2). The key question presented here concerns the meaning of "conduct, transaction, or occurrence." The majority treats this question as a matter dictated by our precedent, particularly *Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179 (Utah 1983), and *Peterson v. Union Pac. R.R. Co.*, 8 P.2d 627 (Utah 1932). *See supra* ¶¶ 39–40, 47. It says that these cases call for relation back of an amended claim when it is based on the same legal theory as that alleged in an earlier pleading and "expand[s] upon [the] factual basis" giving rise to that complaint. *Supra* ¶¶ 47, 51.

¶62 I disagree. The cited cases do not support the standard announced by the majority. None of our cases attempt to interpret— or even quote or paraphrase—the operative text of rule 15(c). So the question presented here is a matter of first impression. And the standard called for by the text of the rule is different from that adopted by the court.

¶63 I would interpret the "conduct, transaction, or occurrence" standard in light of a body of federal case law clarifying the meaning of this legal term of art (which our Utah rule borrowed from the Federal Rules of Civil Procedure). And I would affirm the district court's decision granting the State's motion to dismiss Osman Noor's

amended PCRA petition because his new claim for ineffective assistance of counsel arises out of an entirely distinct transaction or occurrence from that which gave rise to his initial set of claims.

¶64 The claim in Noor's original petition arose out of the allegation that his Somali background and "lack of fluency in English" "prevented him from forming the requisite intent to commit lewdness or forcible sexual abuse" and "impaired his ability to understand the victim's demands that he stop his advances." Noor asserted that no reasonably competent attorney would have failed to assert a *mens rea* defense in these circumstances. So the relevant "transaction" giving rise to Noor's earlier claim was his lawyer's failure to appreciate the culture and language barriers to Noor's interactions *with the victim of his crimes*.

¶65 This was not the "transaction" giving rise to Noor's amended claim. That claim arose out of his counsel's failure to appreciate the language barriers to Noor's interactions *with his attorney*. That is a distinct transaction. It may arise out of "expanded" factual circumstances related to the earlier claim. But rule 15(c) requires more than a vague notion of factual expansion. It calls for relation back only where both sets of claims arise out of the *same* conduct, transaction, or occurrence set forth in the original complaint.

¶66 I respectfully dissent because I think the district court was right to deny Noor's motion for leave to amend. And I write separately to highlight some problems that will result from the majority's reformulation of the standard that governs relation back under civil rule 15(c).

## I. The Majority's Standard

¶67 The majority seeks to trace its relation back standard to a "consistent[]" line of precedent from this court. *Supra* ¶ 47. Citing *Behrens v. Raleigh Hills Hosp. Inc.*, 675 P.2d 1179 (Utah 1983), and *Peterson v. Union Pac. R.R Co.*, 8 P.2d 627 (Utah 1932), the court says that "it is well established in our caselaw that we look to the cause of action" stated in the original pleading and ask "whether, under a liberal reading," a proposed amendment "can be said to expand or modify the original cause of action stated." *Supra* ¶ 47 n.57.

¶68 Based on these cases, the majority holds that an amendment relates back to the date of an original pleading "when the

'amendment . . . does not import into a case a new and different cause of action,' but instead 'merely expands or amplifies what is alleged in the original [pleading].'"[74] *Supra* ¶ 47 (alterations in original). And it states that "an amendment arises out of the same 'conduct, transaction, or occurrence' when it arises out of the same cause of action," *supra* ¶ 47, as that alleged in the original pleading and is based on factual allegations that "expanded upon the factual basis" of the original pleading. *Supra* ¶ 51.

¶69 I disagree with the majority's standard and its application of our case law. Our cases have never interpreted the language of rule 15(c). So we should begin by interpreting the operative text. That text is incompatible with the majority's standard. Instead of asking whether the amended pleading "expand[s] upon [the] factual basis" of the earlier one, the rule requires that both claims arise from the same "conduct, transaction, or occurrence." The majority's standard is likewise incompatible with our case law. And the cases cited by the majority do not support its proposed standard.

*A. Peterson v. Union Pacifiic Railroad Co.*

¶70 The seminal Utah case is *Peterson v. Union Pacific Railroad Co.*, 8 P.2d 627 (Utah 1932). The *Peterson* case involved tort claims asserted by the estate of John Peterson against his employer, Union Pacific Railroad Company. Peterson was killed while working to clear rocks off of a railroad track. *Id.* at 628. His estate filed a complaint asserting negligence claims under the Federal Employers' Liability Act, 45 U.S.C. §§ 51-59. *Id.* The original complaint was timely—within the two-year statute of limitations set forth in the federal statute. *Id.* But the estate later sought to file an amended complaint beyond the limitations period. *Id.* Union Pacific sought

---

[74] The majority seems to try to walk this back at a couple of places in the opinion. In footnote 62, for example, the court says that it has "not suggested" that it is "limiting amendments permissible under rule 15(c) to those that assert the same 'legal theory' as the original pleading." *Supra* ¶ 48, n.62. Fair enough. The court doesn't strictly limit amendments under rule 15 to those based on the same legal theory. But it certainly highlights this as a factor of relevance to its analysis. *See supra* ¶ 48 (noting Noor "did not change the legal theory" from his original petition); *id.* ¶ 54 (listing "same legal theory" as a factor weighing in favor of relation back). And I see no basis for that in rule 15(c).

dismissal of the amended pleading on the ground that it "set[] out an entirely new act of negligence or cause of action," and was therefore time-barred. *Id.* at 628.

¶71 We concluded that the amended negligence claim related back to the date of the original complaint. And in so doing we stated, as the majority notes, that an amendment that "merely expands or amplifies what is alleged in the original complaint" is "properly allowed." *Id.* at 630 (citations omitted). But this was not the articulation of an operative legal test (and it could not have been an interpretation of rule 15(c), which was not in existence at the time of this decision).[75] It was merely a statement of the court's holding. The court emphasized, moreover, that "[t]he cases are in considerable conflict" in their attempt to articulate a governing standard for distinguishing new claims from mere expansions of existing ones. *Id.* And the court's ultimate holding turned on the fact that both sets of negligence claims arose out of the same transaction or occurrence. *Id.* at 630-31.

¶72 Peterson was killed by a rock that fell from a cliff or ledge above the part of the track where he was clearing rocks. That much was undisputed. But the precise source of the falling rock was unknown. The initial (timely) "complaint proceeded on the theory that the rock fell from the overhanging ledge left upon excavation of the right of way out of the mountain side." *Id.* at 629. The amended (untimely) complaint, on the other hand, "proceeded upon the theory that the rock rolled down the mountain side from above the precipitous ledge." *Id.* And this difference yielded somewhat different sets of allegations of the nature of the railroad's negligence—with the original complaint focusing on an alleged "failure to provide a safe place to work" and failure to inspect or warn of falling rocks or that no inspection had been made, and the

---

[75] The "conduct, transaction, or occurrence" test was first introduced as a matter of federal procedure in 1937, when the Federal Rules of Civil Procedure were adopted. FED. R. CIV. P., Historical Note (2012). And the test was first imported into Utah law in 1950, when we adopted the first version of our Utah Rules of Civil Procedure. *See* UTAH R. CIV. P. 15(c) (1950) ("Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.").

amended complaint abandoning the "acts of negligence respecting the ledge" while "retain[ing] and amplif[ying]" the failure to warn allegation as "applied to rocks rolling down the mountain side." *Id.* at 630.

¶73 We concluded that the amended complaint asserted a claim that "merely expand[ed] or amplifie[d] what [was] alleged in the original complaint." *Id.* But we emphasized the "difficulty" of distinguishing new claims from mere expansions of existing ones. *Id.* And we based our decision on the fact that "the transaction alleged in the amendment is the same as in the original complaint"—in that "[t]he accident is the same, the person killed [is] the same, the manner in which the rock struck the deceased is the same, the time and circumstances the same except that in the first complaint it was alleged that the rock fell from the top or face of the cliff rather than farther up the mountain side." *Id.* In other words, we said that a mere change in theory as to the "place from which" the rock fell "does not essentially change the character of the action, nor state a new or different cause of action." *Id.* at 631. We held that "[i]t would be too narrow and technical a construction to hold that this is an entirely new and different cause of action from the one stated in the original complaint." *Id.*

¶74 The majority opinion accordingly finds no footing in the *Peterson* opinion. *Peterson* does not say that an amended claim relates back when it "arises out of the same cause of action" and "expand[s] upon th[e] factual basis" of the original pleading. *Supra* ¶¶ 47, 51. It requires that both claims arise out of the same *transaction*. *Peterson*, 8 P.2d at 630 (noting that "an amplification of allegations already stated" may be permitted "where the *transaction* alleged in the amendment is the *same* as in the original complaint") (emphases added)).

¶75 The *Peterson* opinion admittedly speaks in terms of a distinction between "new" claims and those that merely "expand" on existing ones. But it also emphasizes that line-drawing in this area is "difficult." And its holding ultimately turns on the fact that the two sets of claims in the case arise out of the same transaction or occurrence (and not merely that they make factual allegations that expand on the original pleading).

¶76 To the extent *Peterson* articulates a test that speaks of *new* claims versus *existing* ones, it is at odds with the text of Rule 15(c). *Peterson* was handed down well before our adoption of the Utah Rules of Civil Procedure. And the question presented in this case concerns the meaning of the "conduct, transaction, or occurrence"

test set forth in Rule 15(c). Because that rule was adopted well after *Peterson*, we cannot cite that case as establishing a controlling precedent under the rule.[76]

### B. Behrens v. Raleigh Hills Hospital, Inc.

¶77 The next case cited by the majority is *Behrens v. Raleigh Hills Hospital, Inc.*, 675 P.2d 1179 (Utah 1983). *Behrens* is a wrongful death case against a hospital. The decedent was admitted for treatment for alcohol abuse at the defendant hospital and was given a razor when he asked to be allowed to shave. *Id.* at 1181. He then killed himself with the razor. His estate sued the hospital for wrongful death and received a judgment for $100,000 in a jury trial. *Id.* The trial court granted a motion for new trial, however, based on the failure to give a jury instruction for comparative negligence. *Id.* At that point the plaintiff sought to amend the complaint to add a claim for punitive damages. *Id.* The defendant asserted "that the claim for punitive damages [was] a new claim for relief that [was] barred by the statute of limitations." *Id.* at 1182.

¶78 This court rejected that argument. We held that "an amendment to include damages does not import into a case a new and different cause of action," and thus concluded that the punitive damages claim related back to the date of the original complaint. *Id.* (citations omitted). In so holding we cited rule 15(c), which was then in effect. *See id.* at 1183. But we did not quote the operative language of the rule or offer any interpretation of it. Instead we relied on precedent in Utah and elsewhere holding that a request for punitive

---

[76] The majority seeks to avoid this problem by asserting that our subsequent cases have somehow transformed the *Peterson* standard into an interpretation of a rule promulgated decades later. *See supra* ¶ 39 nn.38,39 (citing *Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1182 (Utah 1983); *Hjorth v. Whittenburg*, 241 P.2d 907, 908 (Utah 1952)). But I see nothing in the cited cases to support that view. In *Behrens* we made no attempt to analyze *Peterson*. *See Behrens*, 675 P.2d at 1183. Nor did we engage with—much less analyze—the text of Rule 15(c). *Id.* So I see no way to read our passing reference to *Peterson* as a decision to "rel[y] upon *Peterson* for our interpretation" of rule 15(c). The *Hjorth* case provides even less support for the majority's view. I find no reference to *Peterson* whatsoever in *Hjorth*.

damages relates back where it "raise[s] no new legal issues" and "does not refer to new or different acts of misconduct." *Id.*

¶79 *Behrens* does not support the majority's new standard. Nowhere does the court endorse the view that a claim in an amended pleading relates back when it "arises out of the same cause of action" and is a factual expansion of allegations in that pleading. *Supra* ¶ 47. The two claims in *Behrens*, in fact, were in some sense distinct: "The proposed amendment to the complaint [did] not refer to new or different acts of misconduct; rather, the amendment relie[d] upon a different legal characterization of the same conduct"—in extending the initial allegation that the defendant's conduct was "negligent" to include an allegation that it was also "'grossly negligent' or reckless." 675 P.2d at 1183.

## II. My Approach

¶80  For reasons explained above this case presents a question of first impression. Because our cases have never interpreted the "conduct, transaction, or occurrence" standard in rule 15(c) we should start with first principles. Those principles begin with the language of the rule. *See Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465. And the operative text says that an amended claim relates back when it arises out of the same "conduct, transaction, or occurrence" set forth in the original complaint. UTAH R. CIV. P. 15(c).

¶81  The quoted language was imported from rule 15(c) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 15(c)(1)(B); *see also* UTAH R. CIV. P. 15(c) & Foreword (1950). Our adoption of Utah Rule 15(c) was accordingly an adoption of the cluster of principles embedded in federal law.[77] And I would thus start with the body of case law interpreting the federal rule in seeking to understand the meaning of "conduct, transaction, or occurrence."

---

[77] *See Tucker v. State Farm Mut. Ins. Co.*, 2002 UT 54, ¶ 7 n.2, 53 P.3d 947 (noting that precedent interpreting federal rules "are persuasive where the Utah Rules of Civil Procedure are 'substantially similar'"); *Drew v. Lee*, 2011 UT 15, ¶ 16, 250 P.3d 48 ("Because the Utah Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, where there is little Utah law interpreting a specific rule, we may . . . look to the Federal Rules of Civil Procedure for guidance.") (citation omitted).

¶82 I am not saying that we are required to follow the federal case law. *See supra* ¶ 47 n.57. The federal standard is in no way binding on this court. The applicable rule is a Utah Rule of Civil Procedure. So it is ours to interpret. But the question of interpretation presented in this case is a matter of first impression. Our cases have never interpreted the operative "conduct, transaction, or occurrence" standard in rule 15(c). We should offer an interpretation of that language now. And the starting point for our interpretation should be the text of that rule.

¶83 This text incorporates a longstanding legal term of art. And we should thus interpret the rule's language by reference to the body of case law establishing the meaning of these terms. *Maxfield v. Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647 ("[W]hen a word or phrase is 'transplanted from another legal source . . . it brings the old soil with it.'"(citation omitted)).

¶84 I would do so here. In light of a longstanding, settled body of cases under federal rule 15(c) I would hold that the "conduct, transaction, or occurrence" test means what it says—it has reference to the factual circumstances giving rise to a set of claims. Thus, I would hold that an amended claim relates back to an original complaint when the new claim arises from the same set of factual circumstances alleged in the earlier complaint.[78]

---

[78] The majority seeks to rehabilitate its approach—and to criticize mine—by pointing to a different clause in rule 15(c). It notes that rule 15(c) "states that not only will an amendment relate back to the date of the original pleading when the amendment asserts a claim that arose out of the conduct[,] transaction[,] or occurrence set out in the original pleading, but that an amendment will also relate back when the claim asserted 'arose out of the conduct, transaction, or occurrence . . . *attempted to be set out* . . . in the original pleading.'" *Supra* ¶ 53 (alteration in original). The majority chides me for failing to consider this language. And it asserts that the "attempted to be set out" language "requires a liberal reading" of the rule that supports its approach. *Id.*

I beg to differ. The quoted language does not enlarge the scope of what counts as the relevant "conduct, transaction, or occurrence." It just says that an amendment should relate back even if the original complaint was inartfully drafted in its attempt to lay out the relevant facts. It is thus inconsistent with the text of the rule to read the

(Continued)

A.C.J. Lee, dissenting

¶85 This standard is easy to state in the abstract but sometimes difficult to articulate with particularity—and occasionally difficult to apply. But this case is an easy one. The transaction alleged in the original petition is quite distinct from that set forth in the amended pleading. In the first petition Noor focused on his trial lawyer's failure to appreciate the culture and language barriers to Noor's interactions *with the victim of his crime*. He alleged ineffective assistance of counsel in his trial lawyer's failure to assert a *mens rea* defense in light of these problems—a defense based on the idea that Noor's cultural background (Somali) and "lack of fluency in English" "prevented him from forming the requisite intent to commit lewdness or forcible sexual abuse" and "impaired his ability to understand the victim's demands that he stop his advances." But Noor changed the subject in his amended petition. He abandoned the focus on his lawyer's failure to appreciate the culture and language barriers to Noor's interactions with the victim of his crimes. Instead he asserted a claim arising from his lawyer's failure to appreciate the language barriers to Noor's interactions *with his attorney*. This claim asserted ineffective assistance in failing to engage an interpreter at trial, as allegedly necessary to allow Noor to communicate with his lawyer concerning his defense and strategy at trial.

¶86 The two petitions accordingly arise from distinct transactions. I would affirm the district court on this basis. I would conclude that Noor's amended claim for ineffective assistance of counsel cannot be viewed as arising from the same "conduct, transaction, or occurrence" set forth in the original complaint.

*A. The Standard in Rule 15(c)*

¶87 The standard in rule 15(c) is straightforward. It says that an amended claim relates back when it arises from the same "conduct, transaction, or occurrence" alleged in the original complaint. The rule is accordingly focused on the factual circumstances giving rise to the plaintiff's claims. Courts have long held that an amended claim relates back if it arises out of the same factual circumstances— or the "conduct, transaction, or occurrence"—set forth in the original

---

"attempted to be set out" language as mandating a liberal reading of *what* was attempted to be set out. This requires leniency only in assessing *how* it was set out.

complaint.[79] And that holds regardless of whether the plaintiff's theory of recovery (or nature of the "cause of action," to use the majority's term) is distinct.[80]

¶88 The courts have sometimes struggled to state a comprehensive test delineating the scope of the relevant "conduct, transaction, or occurrence."[81] But the factual relationship between

---

[79] *See, e.g., United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) ("If the ineffective conduct alleged by [petitioner] in his first petition cannot be said to have arisen out of the same set of facts as his amended claim, his amendment cannot relate back . . . ."); *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985) (concluding that an amended claim did not relate back because that claim was "based on entirely different facts"); *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 739 (9th Cir. 1982) ("Once the defendant is in court on a claim arising out of a particular transaction or set of facts, he is not prejudiced if another claim, arising out of the same facts, is added."); *Wiren v. Paramount Pictures*, 206 F.2d 465, 468 (D.C. Cir. 1953) (concluding that an amended claim did not arise out of the same conduct, transaction, or occurrence even though the subsequent conduct "grew out of" the original pleading because it was "independent and distinct").

[80] *See, e.g., Idaho Power Co. v. United States*, 105 Fed. Cl. 141, 146 (2012) ("[I]t does not matter whether the new claim is premised on a legal theory different from the one set out in the original complaint." (citations omitted)); *Kuba v. Ristow Trucking Co., Inc.*, 811 F.2d 1053, 1055 (7th Cir. 1987) (concluding that an amendment to include treble damages related back to the original negligence claim because res judicata would preclude the prosecution of both claims in separate actions); *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1380 (5th Cir. 1987) (concluding that the amended complaint for breach of implied and express warranty related to the original products liability claim even though the theory of recovery was wholly different); *White v. Holland Furnace Co.*, 31 F. Supp. 32, 34 (S.D. Ohio 1939) ("To give effect to Rule 15(c), . . . the Court should allow an amendment of a pleading where the factual situation was not changed though a different theory of recovery is presented.").

[81] 6A Charles Alan Wright et al., Federal Practice and Procedure § 1497 (3d ed. 2018) (noting that "[j]udicial opinions occasionally have recited mechanical tests in an attempt to determine whether a particular amendment should relate back," such as by

(Continued)

A.C.J. Lee, dissenting

the original and amended petition has always required more than expansion on the facts in the initial pleading. Both sets of claims must arise from the *same* set of factual circumstances. And an amended claim—even one based on the same legal theory or cause of action as that set forth in the original complaint—does not relate back where it arises from conduct, a transaction, or an occurrence that was "distinct in time and place" from that alleged in the first pleading.[82]

¶89 The mere existence of factual expansion has never been sufficient. I am not aware of a single case prior to this one in which a court has concluded that a claim relates back so long as it expands upon the facts of an earlier pleading.[83] The majority nowhere

---

asking whether a "judgment on the claim set forth in either pleading" would "bar an independent action on the other," whether "the same evidence" would "support both the original and amended pleadings," and whether the "measure of damages" is "the same in each case"; and concluding that "[a]lthough each of these formulations expresses a relevant factor, none of them fully embraces the philosophy of Rule 15(c)" (citations omitted)).

[82] *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1134 (9th Cir. 2006) (concluding that the amended complaint does not relate back to the earlier complaint because the acts of disclosure were "distinct in time and place"); *see also Phelan v. City of Chicago*, 125 F. Supp. 2d 870, 877 (N.D. Ill. 2000), *aff'd*, 347 F.3d 679 (7th Cir. 2003) (concluding that "separate employment actions at different times by different City departments involving different jobs do not constitute the 'same conduct, transaction or occurrence' under Rule 15(c)(2)"); *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) (holding that "Rule 15(c) does not apply where the [petitioner's] proposed amendment makes claims or is based on occurrences 'totally separate and distinct, "in both time and type" from those raised in his original motion'" (quoting *United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000) & *Craycraft*, 167 F.3d at 457)); *Nat'l Distillers & Chem. Corp. v. Brad's Mach. Prods., Inc.*, 666 F.2d 492, 496 (11th Cir. 1982) (concluding that the additional claims in the amendment did not relate back to the original complaint because the allegations "were separate and distinct from the price fixing violations alleged in the original complaint").

[83] The majority does not cite such a case—or any support for this notion. Instead it seeks to frame my proposed standard as the

(Continued)

explains how much "expansion" would be allowed under its novel standard. Such a standard, moreover, will undermine the notice rationale of rule 15(c). *See supra* ¶ 42 (highlighting this rationale). A standard allowing mere factual expansion to relate back will always beg the question of how much expansion is too much. And the arbitrary nature of that inquiry means that a defendant will have no notice of the range of claims that may later be deemed to relate back to an earlier pleading.

¶90 The way to provide notice is to adhere to the text of the rule. That text suggests that "a party who has been notified of a litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Supra* ¶ 42 (citation omitted). I would stick to that standard. I believe that doing so is the only way to advance the notice rationale highlighted by the majority.

### B. Mayle v. Felix

¶91 The United States Supreme Court's analysis in *Mayle v. Felix*, 545 U.S. 644 (2005), though not binding on this court, is also instructive. In *Mayle* the court was presented with a federal analogue to the question presented here—the standard for relation back under federal rule 15(c) for an amended claim for post-conviction review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 545 U.S. at 648. That statute imposes a one-year limitation period for federal habeas petitions. 28 U.S.C. § 2244(d)(1). And, as in this case, the petitioner in *Mayle* asserted a timely post-conviction claim but then later sought to amend the petition by adding a new claim. The timely claim in *Mayle* asserted that "the admission into evidence of videotaped testimony of a witness for the prosecution violated his rights under the Sixth Amendment's Confrontation

---

substantial equivalent of the one it applies—asserting that "[t]here is little, if any" real distinction between our standards except perhaps "word choice." *Supra* ¶ 47, n.61. I see the matter differently. My approach admittedly looks at "the factual circumstances giving rise to the claim." *Id*. But the factual circumstances I would consider are set forth in the text of rule 15(c)—the "conduct, transaction, or occurrence" giving rise to the claim. Utah R. Civ. P. 15(c)(2). The majority's test is much broader, and less definite. And it considers (in some unspecified way) whether the proposed amendment "expand[s] or modif[ies] the original cause of action stated." *Supra* ¶ 47 n.57. This is a far less determinate inquiry than the one I would embrace.

Clause." 545 U.S. at 648. The untimely claim, alleged in an amended pleading filed five months after the expiration of AEDPA's time limit, asserted that "in the course of pretrial interrogation, the police used coercive tactics to obtain damaging statements from him, and that admission of those statements at trial violated his Fifth Amendment right against self-incrimination." *Id.* at 649.

¶92  The district court in *Mayle* denied the petitioner's motion for leave to amend to add this claim, holding that petitioner's "allegedly involuntary statements to police d[id] not arise out of the same conduct, transaction or occurrence as the videotaped interrogation" of the prosecution witness. *Id.* at 652 (alteration in original). The Ninth Circuit reversed. It held that the relevant "transaction" under federal rule 15(c) was petitioner's "trial and conviction in state court." *Id.* at 653 (citation omitted).

¶93 The Supreme Court reversed, in an opinion by Justice Ginsburg. It noted that "[t]he key words are 'conduct, transaction, or occurrence.'" *Id.* at 656. And it explained that the Ninth Circuit's "comprehensive definition" of those words would allow "virtually any new claim introduced in amended petition" under AEDPA to "relate back." *Id.* at 656–57. After all, Justice Ginsburg explained, "federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* at 657 (citations omitted).

¶94 The *Mayle* Court also noted that a "majority" of federal circuit courts had adopted a much narrower standard than that embraced by the Ninth Circuit. *Id.* Under the majority view, relation back is allowed "only when the claims added by amendment arise from the same core  facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* (citation omitted).

¶95 Justice Ginsburg's opinion for the Court embraced this majority view. It held that "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659 (citations omitted). And it emphasized that the rule 15(c) standard must be defined in a way that "relaxes, but does not obliterate, the statute of limitations" in the operative statute (AEDPA). *Id.* (citation omitted).

¶96 The *Mayle* Court also connected its "common core of operative facts" test to longstanding federal case law. It cited a long string of federal court of appeals cases requiring an amended claim to arise from a single episode identified in the original complaint. *See id.* at 657–60. And it explained that its approach was likewise

consonant with the standard set forth in *Tiller v. Atlantic Coast Line Railroad Co.*, 323 U.S. 574 (1945).

¶97   *Tiller* is a counterpart to our *Peterson* case. It involved a tort claim against a railroad under the Federal Employers' Liability Act. The plaintiff "initially alleged various negligent acts," but then sought to file an amended pleading adding "a claim under the Federal Boiler Inspection Act for failure to provide the train's locomotive with a rear light." *Mayle*, 545 U.S. at 659. *Tiller* "held that the amendment related back, and therefore avoided a statute of limitations bar, even though the amendment invoked a legal theory not suggested by the original complaint and relied on facts not originally asserted." *Id.* But the Federal Boiler Inspection Act claim nonetheless related back because "[t]here was but one episode-in-suit in *Tiller*"—"a worker's death attributed from the start to the railroad's failure to provide its employee with a reasonable safe place to work." *Id.* at 660. Thus, the plaintiff in *Tiller* "based her complaint on a single 'occurrence,' an accident resulting in her husband's death." *Id.* But the *Mayle* Court emphasized that that standard was not met in the case before it, given that the petitioner "targeted separate episodes, the pretrial police interrogation of [a] witness . . . in [the] original petition" and the petitioner's "own interrogation at a different time and place in [the] amended petition." *Id.* And it declined to find relation back under federal rule 15(c).

¶98   In so doing the *Mayle* Court also highlighted the effects of a contrary conclusion on the one-year limitations period set forth in AEDPA. It noted that "AEDPA's limitation period would have slim significance" under the Ninth Circuit's standard. *Id.* at 662 (citations omitted). And it emphasized that "it would be anomalous to allow relation back under" federal rule 15(c) "based on a broader reading of the words 'conduct, transaction, or occurrence' in federal habeas proceedings than in ordinary civil litigation." *Id.* at 663.

¶99   These are all salient points. And in my view they cut strongly against the majority's fuzzy standard and in favor of a standard based on the plain language of rule 15(c). First and foremost, the *Mayle* opinion reinforces the fact that the settled, majority interpretation of "conduct, transaction, or occurrence" is incompatible with the approach adopted by our court today. Nobody in *Mayle* was arguing for a "same cause of action" test or a hazy "factual expansion" qualifier. Certainly none of the lower federal courts had embraced such a standard. Everyone understood the "conduct, transaction, or occurrence" test to require a focus on

the *specific factual circumstances* set forth in the original complaint. The only question was how to define the relevant set of factual circumstances.

¶100   The *Mayle* Court, moreover, emphasizes the need to assure that the rule 15(c) standard does not override the operative statute of limitations. And it shows how the standard approach to "conduct, transaction, or occurrence" preserves a role for a statute of limitations applicable to post-conviction review claims.

¶101   The majority's standard here is perhaps narrower than that embraced by the Ninth Circuit in *Mayle*. But the court never clearly identifies the "conduct, transaction, or occurrence" that is relevant to our inquiry.[84] Instead it says that what really matters is that the new claim be the same "cause of action" (meaning the same legal theory of relief) as that asserted in the original complaint. And where that is so (as it often will be under the PCRA, in that the core claim arising under the PCRA is a claim for ineffective assistance of counsel), the court merely requires that the new claim be rooted in the "same kind of factual basis" as that set forth in the original petition. *Supra* ¶ 47.

¶102   The court's standard, however, is incompatible with the longstanding approach of the federal courts—an approach that was

---

[84] At one point the majority implies that Mr. Noor's entire trial could qualify as the "same time and place" for purposes of rule 15(c) analysis. *Supra* ¶ 52. Elsewhere it says that the relevant "core fact" giving rise to both sets of claims is the fact that "his counsel failed to present argument based on [Noor's] inability to understand English." *Supra* ¶ 47 n.61. Neither of those views of the relevant "conduct, transaction, or occurrence" is tenable. The first is the same untenably broad approach embraced by the Ninth Circuit in *Mayle* (and rejected by the Supreme Court). And the second underscores the fact that the majority is allowing widely disparate events to relate back under the guise of "factual expansion" instead of focusing on the same "conduct, transaction, or occurrence." The "conduct, transaction, or occurrence" giving rise to Noor's first claim involved Noor's interactions with the victim of his crimes. *See supra* ¶ 50. And the "conduct, transaction, or occurrence" giving rise to his amended claim was very different. This claim arose out of events at a different time and place and involving different actors—Noor's interactions with his trial counsel. *Id.*

well settled by the time our Utah rule was adopted. *See White v. Holland Furnace Co.*, 31 F. Supp. 32, 34 (S.D. Ohio 1939) (discussing the amendments to the federal rule 15(c) and noting that "[t]he emphasis of the courts has been shifted from a theory of law as the cause of action, to the specified conduct of the defendant upon which the plaintiff tries to enforce his claim" (citing *N.Y. Cent. R.R. v. Kinney*, 260 U.S. 340 (1922); *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1933)).[85] And the court's standard is fuzzy and ill-defined. We are told very little about what it means for a new claim to be rooted in the "same kind of factual basis" as that alleged in an earlier petition. The closest the court comes to elaborating on this standard is to say that it is enough for the new pleading to "expand" upon the facts of the earlier one. *Supra* ¶ 51. I have no idea where this standard comes from or what it will mean going forward. It seems aimed at opening the door for future courts to override the statute of limitations in our PCRA on the arbitrary ground that an entirely new set of circumstances is merely an "expansion" of the facts in the original pleading.

¶103 The court's standard, moreover, will presumably apply outside the PCRA. Because we have never before interpreted the terms of rule 15(c) the majority opinion in this case will set the standard for relation back for any of a range of claims. And so long as a new claim happens to state the same "cause of action" as that advanced in a prior complaint, the new claim will relate back so long as it has a "factual basis" that "expands" upon the initial pleading.

¶104 The court's standard sets a new course for our law under rule 15(c). I am unsure how it will play out in the future. But it seems sure to bring unrest and uncertainty to this important area of Utah procedure.[86]

---

[85] The majority seeks to undermine my approach on the ground that the federal standard that I embrace "did not exist" at the time of Rule 15(c)'s adoption. *Supra* ¶ 43 n.51. But these and other cases put that notion to rest. My approach is not to "strictly" interpret rule 15(c). *Supra* ¶ 56. It is to interpret it fairly, in light of the language of the federal rule that we imported into our Utah rule. And we cannot interpret this language without considering the federal counterpart to our Utah rule.

[86] The majority seeks to avoid these and other problems by pointing to Mr. Noor's immigration status, his lack of English

(Continued)

## C. Application of the Rule 15(c) Test to this Case

¶105   For the above reasons I would apply a standard dictated by the plain language of rule 15(c). I would hold that an amended claim relates back to an earlier complaint only where it arises out of the same "conduct, transaction, or occurrence" set forth previously. And I would define that standard as a long line of federal courts have—to focus on the factual circumstances giving rise to the claim, without regard to whether the claim is rooted in the same legal theory as asserted previously.

¶106   I would hold that a new claim relates back to an earlier one only where it arises from the same core of operative facts alleged in the original complaint. And I would clarify that it does not relate back where it arises from facts that were "distinct in time and place" from that alleged in the first pleading. *See supra* ¶ 31 & n.5.

¶107   I would also affirm the district court's decision under this standard. I would hold that Noor's new claim for ineffective assistance of counsel does not relate back to the original petition

---

proficiency, and his *pro se* status. *Supra* ¶ 57. Yet it nowhere explains how these considerations affect the standard that it applies—except to suggest that we should be "lenient" to *pro se* litigants and give a "liberal" interpretation to motions to amend under rule 15. *Supra* ¶ 51 n.64. And I fail to see the salience of the majority's concerns. Certainly I bear some human sympathy for those who are left to navigate the legal system without either counsel or proficiency in the predominant language of our culture. Yet to my knowledge we have never cited those concerns as grounds for altering our view of the law—or its application to a *pro se* party. We can be lenient to unrepresented parties by giving them the benefit of the doubt in the interpretation of their legal filings. That is all the leniency that our law has called for. *See McNair v. State*, 2014 UT App 127, ¶ 12, 328 P.3d 874 (noting that a "pro se document 'is to be liberally construed'" to excuse "inartful[] plead[ing]" (internal quotations and citations omitted)).

But the problem here is not an ambiguity in or failure of pleading. It is in the interpretation of rule 15(c) and its application to this important case. And I fear that a goal of solicitude for Mr. Noor may invoke the maxim that hard facts make bad law. *See N. Sec. Co. v. United States,* 193 U.S. 197, 364 (1904) (Holmes, J. dissenting) ("Great cases, like hard cases, make bad law.").

because the new claim arose from an occurrence that was "distinct in time and place" from that alleged in the petition.

¶108   Noor's original claim for ineffective assistance of counsel arose out of his counsel's failure to appreciate the language and culture barriers to Noor's interactions with the victim of his crimes. The amended petition had a different focus. It arose out of alleged barriers to Noor's effective communication with his trial attorney. Thus, the second pleading is in some sense a factual expansion of the first—insofar as it deals with a completely new set of facts. But the two claims did not arise out of the same conduct, transaction, or occurrence. They focused on two very different relationships that were "distinct in time and place" (and actor).[87]

¶109   The amended claims at issue here accordingly do not arise from the same conduct, transaction, or occurrence set forth in the original complaint. And for that reason they cannot relate back to the original petition. I would so hold. I would affirm the district court on the ground that Noor's amended claims are barred by the statute of limitations set forth in the PCRA.

III

¶110   The standard in rule 15(c) is straightforward. A claim in an amended pleading relates back to an earlier pleading if both arise from the same "conduct, transaction, or occurrence." The majority distorts that standard by allowing relation back so long as a new claim alleges the same kind of cause of action as that in an earlier

---

[87] The majority challenges this conclusion on the ground that Noor alleged in both petitions "that his trial counsel was ineffective *at trial* for failing to argue the significance of his inability to understand English." *Supra* ¶ 52. It also emphasizes that Noor's focus in both petitions was "trial counsel," that his "cause of action" in both cases was a claim for "ineffective assistance of counsel," and that the "time and place" where both claims arose was at "trial." *Id.* This just underscores the problematic nature of the majority's inquiry—and its incompatibility with the text of rule 15(c). If trial counsel is the relevant "actor" and the relevant "transaction" is the trial then few, if any, ineffective assistance claims will fall outside of rule 15(c). The only limiting factor will be the ability to identify a way to frame the new pleading as a simple "expansion" of the earlier. And most any enterprising lawyer can find some plausible way of doing so.

A.C.J. Lee, dissenting

pleading and expands upon the facts laid out therein. I dissent because this new standard is incompatible with our rule. I also fear that it will lead to arbitrary results going forward.

¶111   There is a sense in which it could be said that both of Noor's claims arose out of a common "transaction." If the relevant transaction is defined as *Noor's trial* then any claim for ineffective assistance at trial arose out of that transaction. That cannot be the relevant transaction for purposes of a PCRA claim for ineffective assistance under rule 15(c), however. The PCRA requires that any post-conviction claim for ineffective assistance be asserted within one year. UTAH CODE § 78B-9-107. And rule 15(c) must be interpreted in a manner that preserves some application of that statute of limitations. *Cf. Mayle v. Felix*, 545 U.S. 644, 657, 659 (2005) (rejecting the trial-as-the-transaction concept because "virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature" and thus would "obliterate[] the statute of limitations"). We thus cannot conclude that the trial was the relevant transaction, or that the claim at issue here relates back because it arose out of that transaction.

¶112   The majority stops a half-step short of identifying the relevant transaction at that level of generality. But it adds a gloss that is not compatible with the text of rule 15(c), and that will distort the development of our law in this field. I respectfully dissent on that basis.

———————